UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHELLY COWEN                                    CIVIL ACTION

VERSUS                                          NO: 11-118

ALLSTATE INSURANCE CO.                          SECTION: R(3)

**<u>ORDER AND REASONS</u>**

Defendant Allstate Insurance Company moves for partial summary judgment as to plaintiff's claims for statutory penalties and attorney fees.  Because the Court finds that Allstate has demonstrated that it denied plaintiff's claim in good faith reliance on evidence of arson, the Court GRANTS Allstate's motion.

**I.   BACKGROUND**

This case concerns an insurance dispute over damage caused by a fire to plaintiff Shelly Cowen's home at 42056 Dunson Road in Pontchatoula, Louisiana.  On January 12, 2010, the Ponchatoula Fire Department received a fire alarm for the residence and arrived at Cowen's house at 3:18 a.m.  Cowen and her children were staying with her sister at the time of the fire.  Allstate Insurance Company issued Policy No. 910 714601 01/24 to Cowen covering the house on January 12, 2009.[1]  The policy included a

---

[1]   R. Doc. 1-3 at 1.

limit of $155,300 for the dwelling, $15,530 for other structures, and $108,710 for personal property.[2]

According to the evidence submitted, Cowen notified Allstate of her loss immediately after the fire, and Allstate first examined the property on January 14, 2010.[3] Over the next four months, Allstate issued several payments to Cowen for additional living expenses.[4] During this time, Allstate conducted an investigation into the origin of the fire. Following this investigation, and Cowen's examination under oath (EUO), Allstate informed Cowen that it denied her claim under the concealment and fraud exclusions of its policy. Allstate took the position that Cowen knew of or participated in causing the fire at her residence, made material misrepresentations during her EUO and failed to cooperate fully with the investigation.[5]

Cowen filed this action in state court on January 8, 2011, and Allstate removed it to this Court on January 19, 2011.[6] Cowen claims that she is entitled to the full amount of her policy and additional living expenses, as well as statutory penalties, interest, and attorney fees for bad faith claims

---

[2] R. Doc. 14, Def.'s Ex. E, at 4.

[3] R. Doc. 14, Def.'s Ex. A1, at 52.

[4] *See id.* at 13, 20, 22.

[5] R. Doc. 14, Def.'s Ex. A2.

[6] R. Doc. 1.

2

handling.[7]  Allstate now moves for partial summary judgment on Cowen's bad faith claims.[8]

## II. STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."  *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil* 2d § 2738 (1983)).

---

[7]     R. Doc. 1-3 at 2.

[8]     R. Doc. 14.

3

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *Id.* at 325; *see also Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial.'") (citing *Celotex*, 477 U.S. at 332).

**III. DISCUSSION**

**A.   Bad Faith Claims**

Louisiana law imposes penalties on insurers who arbitrarily or capriciously fail to pay a claim. *See* La. Rev. Stat. §§ 22:1892, 22:1973(b)(5).[9] In order to recover the statutory penalties, a claimant must demonstrate "that his insurer (1) received satisfactory proof of loss, (2) failed to pay within the required time,[10] and (3) acted in an arbitrary and capricious manner." *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 297 (5th Cir. 2009); *La. Bag Co., Inc. v. Audubon Indemnity Co.*, 999 So.2d 1104, 1112-13 (La. 2008). The Louisiana Supreme Court has interpreted "arbitrary and capricious" to mean vexatious. *La. Maint. v. Certain Underwriters*, 616 So.2d 1250, 1253 (La. 1993). A "vexatious refusal to pay means unjustified, without reasonable or probable cause or excuse." *Dickerson*, 556 F.3d at 297 (citing *Reed v. State Farm Mut. Auto Ins. Co.*, 857 So.2d 1012, 1021 (La.

---

[9] Sections 22:1892 and 22:1973 were previously numbered as §§ 22:658 and 22:1220, respectively. Furthermore, the Louisiana Supreme Court has noted that both statutes incorporate the same standard and proscribe the same conduct. *Reed v. State Farm Mut. Auto Ins. Co.*, 857 So.2d 1012, 1020 (La. 2003).

[10] La. Rev. Stat. §§ 22:1892 and 22:1973 set statutory time periods of thirty and sixty days respectively.

2003))(internal quotations omitted). Both "arbitrary and capricious" and "vexatious refusal to pay" describe an insurer "whose willful refusal of a claim is not based on a good-faith defense." *Id.* (citing *La. Maint.*, 616 So.2d at 1253).

The bad faith statutes are penal in nature and should be strictly construed. *McDill v. Utica Mut. Ins. Co.*, 475 So.2d 1085, 1092 (La. 1985). "The sanctions of penalties and attorney fees are not assessed unless a plaintiff's proof is *clear* that the insurer was in fact arbitrary, capricious, or without probable cause in refusing to pay." *Reed*, 857 So.2d at 1021 (emphasis added); *see also Holt v. Aetna Cas. & Sur. Co.*, 680 So.2d 117, 130 (La. App. 1996)("In bad faith actions, the insured is seeking extra-contractual damages, as well as punitive damages. Therefore, the insured's burden is great."). The Court should impose penalties only "when the facts 'negate probable cause for nonpayment.'" *La. Bag Co., Inc. v. Audubon Indem. Co.*, 999 So.2d 1104, 1114 (La. 2008)(quoting *Guillory v. Travelers Ins. Co.*, 294 So.2d 215, 217 (La. 1974)).

Since the insured bears the burden to prove bad faith, *Reed*, 857 So.2d at 1021, plaintiffs must set forth specific facts indicating that a genuine issue exists for trial. *Celotex*, 477 U.S. at 324-25. They cannot rely on the pleadings alone. *Id.*

Allstate contends that the denial of Cowen's claims were based on three defenses: arson, material misrepresentation, and lack of full cooperation.[11]

**B. Arson**

Arson is an affirmative defense under Louisiana law. *Kelly v. Commercial Union Ins. Co.*, 709 F.2d 973, 975 (5th Cir. 1983). In order for a defendant to prevail on an arson defense, the defendant must demonstrate "(1) that the fire was of an incendiary origin, and (2) that the plaintiff was responsible for setting the fire." *Id.* (citing *Sumrall v. Providence Wa. Ins. Co.*, 60 So.2d 68, 69 (La. 1952)). Proof of plaintiff's responsibility may be demonstrated by circumstantial evidence, including by proof of plaintiff's motive. *Id.* at 795-96. (citing *Rist v. Commercial Union Ins. Co.*, 376 So.2d 113 (La. 1979)). The defendant can establish the defense by a preponderance of the evidence. *Wilson v. State Farm Fire and Cas. Ins. Co.*, 178 Fed. Appx. 437, 441 (5th Cir. 2006)(holding that, under *Sumrall*, a

---

[11] Cowen now appears to claim that Allstate's alleged bad faith extends not only to her, but also to American Home Mortgage Servicing, Inc. (AHMSI), the mortgagee-insured. R. Doc. 25 at 3, 6-8. Cowen notes that Allstate paid AHMSI outside the statutory time frame and contends that Allstate is therefore not entitled to summary judgment on the issue of bad faith. Cowen has not pointed to any evidence that AHMSI has submitted a claim to, let alone instituted any legal action, against Allstate. Accordingly, the Court does not address this claim.

defendant was not required to exclude all other reasonable causes of the fire).

Based on the matters discussed below, the Court finds that Allstate had a reasonable basis to deny Cowen's claim because of evidence suggesting Cowen's involvement with the fire. First, the parties do not dispute that the fire had an incendiary origin. Second, Allstate submits evidence of Cowen's precarious financial situation in support of its belief that Cowen had a motive to commit arson.[12] Cowen testified that she did not make any mortgage payments from April 2009 to February 2010 and estimated that she owed a total of $19,000 to the mortgage company at the time of the fire.[13] She also had not made payments on a $1,000 loan from American Financial Services for ten months before the fire. Cowen further testified that she took home approximately $350 to $450 every two weeks from a waitressing job and that her ex-husband provided $745 a month in child support.[14] Allstate demonstrated that Cowen's combined income is insufficient to cover her monthly mortgage payments of $1,320.[15] Allstate also submits evidence that Cowen had two

---

[12] R. Doc. 14-4 at 5.

[13] R. Doc. 14, Def.'s Ex. C, at 52.

[14] *Id.* at 7-8.

[15] R. Doc. 14-4 at 6.

checking accounts that were closed in 2009 and that her credit cards had been discontinued at the time of the fire.[16]

Third, Allstate submitted evidence that there was activity at Cowen's residence that appeared to be in preparation for the fire. In support of this contention, Allstate submits the claim history file and an investigation report.[17] Both records contain witness statements that describe a flurry of activity before the fire. Glenn Gay, Allstate's claims fraud investigator, reported being told that numerous dog cages had been moved from next to the house to the back of the yard immediately before the fire.[18] Two of Cowen's neighbors informed Allstate representatives that Cowen's mother had moved numerous personal items out of the house about a week before the fire and used a horse trailer to do it.[19] Mark Canterbury, who knew Cowen, told Gay that he assisted Cowen's mother with the move, which included furniture and clothing.[20] When asked, Cowen denied knowing what items were moved and denied knowing that they were moved a week before the fire.[21]

---

[16]   R. Doc. 14, Def.'s Ex. C, at 53-55; 43-44.

[17]   R. Doc. 14, Def.'s Ex. A1 and D1.

[18]   R. Doc. 14, Def.'s Ex. D1, at 4.

[19]   R. Doc. 14, Def.'s Ex. A1, at 29 and 53.

[20]   R. Doc. 14, Def.'s Ex. D3, at 5.

[21]   R. Doc. 14, Def.'s Ex. C, at 61.

Finally, Allstate also submitted that it had evidence of Cowen's involvement with previous fires, which further supported a finding of motive in the present case. In support of this contention, Allstate submitted Cowen's claim history file[22] and Gay's investigation report. Fernando Morales, an Allstate claims representative, noted in the claim history file that Lance Lamarca, a Tangipahoa Parish fire investigator, informed him that a business owned by Cowen and her mother had been destroyed by fire three years before the fire at issue.[23] Lamarca stated that the business was not going well at the time of the fire.[24] Gay reported that Jimmy Stoetzner, who knew Cowen, told him that he heard Cowen and her then-boyfriend admit to setting the earlier fire.[25] Stoetzner's statement was corroborated by Lindsey Miller.[26]

Although Cowen argues that the statements noted in the claim history file and the investigator's report are hearsay,[27] the Court finds this contention without merit. *See* Fed. R. Evid.

---

[22] R. Doc. 14, Def.'s Ex. A1.

[23] R. Doc. 14, Def.'s Ex. A1, at 31.

[24] *Id.* Lamarca also stated that he heard rumors that Cowen's mother had taken merchandise out of the building before that fire.

[25] R. Doc. 14, Def.'s Ex. D1, at 4.

[26] R. Doc. 14, Def.'s Ex. D3, at 2.

[27] *Id.* at 5.

801(c) (hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). The statements in the claim history file and the investigator's report are not hearsay because they are not offered for their truth, but for the fact that the statements were made. *See U.S. v. Dunigan*, 555 F.3d 501, 507 (5th Cir. 2009)("Out of court statements offered for another purpose, *e.g.*, providing background information to explain the actions of investigators, are not hearsay."). The statements are being used to show that Allstate was aware of the statements and therefore had a reasonable basis for its arson investigation, regardless of whether the statements were true. *Anderson v. State Farm Mut. Ins. Co.*, No. 2:06-CV-2843-JAM-KJM, 2008 WL 2441086, at *1 (E.D. Cal. June 13, 2008)(letters admissible as nonhearsay to show State Farm's state of mind in determining whether it unreasonably withheld insurance benefits). *See generally Brauninger v. Motes*, 260 Fed. Appx. 634, 637 (5th Cir. 2007)(report containing out-of-court statements admissible when offered not for truth of the matter asserted, but to show what employer relied on in making decision to fire employee); *Timmerman v. McLaughlin*, 125 F.3d 637 (5th Cir. 1997)(out-of-court statements in affidavits are admissible as nonhearsay because defendants "point to these statements to demonstrate their state of mind in an attempt to

establish the reasonableness of their subsequent investigation of Timmerman"; whether tips were correct was "immaterial"). *See also Garner v. Mo. Dept. of Mental Health*, 439 F.3d 958, 960 (8th Cir. 2006) (out-of-court statements admissible as nonhearsay to explain why employer investigated employee, not to prove the truth of the underlying allegation); *Fester v. Farmer Bros. Co.*, 49 Fed. Appx. 785, 789 (10th Cir. 2002)("The relevant inquiry was whether Carson honestly believed the findings in the report and acted in good faith on those beliefs, not whether the report's findings were accurate.  Thus, the report was nonhearsay because it was being offered to establish Carsons's state of mind in making the decision to discharge Fester and was not offered for the truth of the matter asserted."); *Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1322-23 (11th Cir. 1982)("The documents [containing out-of-court statements] were not tendered to prove the particulars of their contents, but to help establish that Sears was motivated, in good faith, to discharge Moore for reasons other than age.").[28]  Furthermore, any statements reportedly made by Cowen are admissible as admissions, and are not hearsay.  *See* Fed. R. Evid. 801(d)(2)(A)(a statement is not

---

[28]  Indeed, an insurer would be hard put ever to establish that it acted in good faith in a prelitigation context if it could not show that it obtained witnesses' statements about what they saw and heard before making a claim determination.

hearsay if it is offered against a party, and it is the party's own statement). Plaintiff's objection is therefore overruled.

Cowen also argues that she had requested a mortgage modification to lower her monthly payments, which was approved in August 2010. Cowen does not provide any evidence to support this contention, and it was long after the fact, if it occurred. The Court does not consider conclusory allegations and bald assertions to be competent summary judgment evidence. *Warfield v. Byron*, 436 F.3d 551, 559 (5th Cir. 2006)(citing *Freeman v. Tex. Dept. of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 1994)). Cowen also submits her father's testimony that she repaid him for his assistance with her previous threatened foreclosure.[29] Nevertheless, this does not change Cowen's financial condition in 2010. Finally, Cowen generally argues that Allstate did not investigate other possible suspects and limited its investigation to Cowen.[30] This contention is rebutted by evidence that Allstate asked Cowen about other possible suspects. She mentioned Mark Canterbury, whom she said was angry with her after she kicked him out of her house.[31] Allstate interviewed Canterbury and determined that he had an alibi on the night in

---

[29] R. Doc. 25, Pla.'s Ex. F.

[30] R. Doc. 25 at 9.

[31] R. Doc. 14, Def.'s Ex. C, at 66.

13

question.[32] Canterbury was also on friendly enough terms with Cowen's mother to help her move her furniture.  Further, Gay testified that he obtained 911 reports and interviewed numerous witnesses, including fire personnel.[33]  Although he testified that Allstate kept him on a "short leash,"[34] he also stated that he conducted a "lengthy investigation."[35]  Gay did not focus exclusively on Cowen and testified that "everything is suspect to a certain degree."[36]  Gay further testified that although he did not have direct evidence of Cowen's involvement, he obtained evidence that she had been involved in an earlier fire, which he considered circumstantial evidence of her involvement with the fire at issue.[37]  His report also notes that before the fire, numerous dogs cages were moved about a hundred feet away from the house, which could also be considered circumstantial evidence of Cowen's involvement.

Cowen also relies on the statement by Morales, Allstate's claims representative who ultimately recommended denying Cowen's

---

[32]  Gay Dep. at 84.

[33]  Gay Dep. at 16, 72.

[34]  *Id.* at 64.

[35]  *Id.* at 41.

[36]  *Id.* at 119.

[37]  *Id.* at 66-67.

14

claim,[38] that he did not remember Gay's telling him that he found no circumstantial evidence tying Cowen to the fire.[39] This is insufficient to create an issue of fact as to whether Allstate had a good faith basis to deny this claim. Morales testified that the evidence Gay and he gathered showed that Cowen had either a direct or indirect involvement in the fire, and he stated that he denied the claim because (1) the fire "was incendiary in origin"; (2) Cowen had the opportunity to set the fire or have someone to do it; (3) there were inconsistencies in her statements pertaining to whether items were removed from the house, possibly in preparation for the fire; and (4) he believed Cowen had a strong financial motive to set the fire.[40]

That Allstate did not determine with certainty that Cowen started the fire does not make its denial of her claim in bad faith. *Whelan v. State Farm Fire & Cas. Co.*, No. 10-1803, 2011 WL 1869431, at *1 (E.D. La. May 16, 2011)(on motion for summary judgment, court held that State Farm's denial of claim not in bad faith because "there is a legitimate question as to who started the fire in general"). Allstate has demonstrated a "reasonable and legitimate question as to the extent and causation" of the fire, which makes statutory penalties inappropriate. *Guillory v.*

---

[38] Morales Dep. at 12.

[39] *Id.* at 40.

[40] *Id.* at 55.

*Lee*, 16 So.3d 1104, 1127 (La. 2009). *See also La. Bag.*, 999 So.2d at 1114 ("when there are substantial, reasonable and legitimate questions as to the extent of an insurer's liability or insured's loss, failure to pay within the statutory time period is not arbitrary, capricious, or without probable cause"). This is true even if Allstate does not prevail on the arson defense at trial, because it has demonstrated a good-faith basis for denying the claim. *See Domino v. Allstate Ins. Co.*, No. 09-7348, 2010 WL 4066647, at *5 (E.D. La. Oct. 15, 2010)(granting summary judgment to Allstate on the issue of bad faith penalties because "[w]hether or not Allstate's denial of the personal property claim is found to be correct or incorrect at trial, it had a good faith basis to deny the claim."). Cowen simply has not set forth specific facts indicating that a genuine issue of bad faith exists for trial.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Allstate's motion for partial summary judgment on the issue of statutory penalties and attorney fees based on Allstate's good-faith reliance on the arson defense. Because the Court grants

Allstate's motion on this ground, it need not consider the defenses of lack of cooperation or material misrepresentation.

New Orleans, Louisiana, this 22nd day of November, 2011.

_____Sarah Vance_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE